J-A09039-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LENNY RAMON SHORT, | : | |
| | : | |
| Appellant | : | No. 909 WDA 2019 |

Appeal from the Judgment of Sentence Entered May 6, 2019
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0009942-2018

BEFORE: SHOGAN J., MURRAY, J. and STRASSBURGER, J.[*]

MEMORANDUM BY STRASSBURGER, J.: FILED JULY 20, 2020

Lenny Ramon Short (Appellant) appeals from the May 6, 2019 judgment of sentence imposed following his conviction by a jury for resisting arrest, and three summary traffic violations. We affirm.

We provide the following background. On June 19, 2018, around 2:40 a.m., Officer Cody Hayden of the Munhall Borough Police Department was monitoring traffic. Using a device called "AccuTrack,"[1] he manually clocked Appellant's vehicle traveling 57.9 miles per hour, in violation of the 25-mile-

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1]. The Court explains an officer measures how long it takes a vehicle to cross two lines painted on the road by manually starting and stopping a stopwatch. AccuTrack then calculates and produces the vehicle's approximate speed based on the officer's measurements.

per-hour zone. Officer Hayden followed and stopped directly behind Appellant's vehicle, which was stopped at a traffic light at Ravine Street and 8th Avenue. Officer Hayden radioed Allegheny County dispatch, advising dispatch that he was initiating a traffic stop and asking dispatch to run Appellant's registration plate.

Once the traffic light turned green, Appellant proceeded through the intersection while Officer Hayden activated his lights and sirens. Appellant's vehicle did not immediately stop and proceeded another three-quarters of a mile. In pursuit of Appellant's vehicle, Officer Hayden radioed dispatch again, requesting additional units. During the brief pursuit, Appellant's vehicle maintained the same distance from Officer Hayden's vehicle and reduced its speed at times, before turning off the road and stopping in a well-lit, bus turnaround. Officer Hayden pulled in behind Appellant's vehicle, exited his vehicle, and approached Appellant's vehicle on the driver's side with his right hand placed on the gun on his hip and a flashlight in his left hand.

Officer Hayden, speaking through Appellant's open driver's side window, initially questioned Appellant as to why he did not stop immediately, and then requested Appellant provide his driver's license, registration, and proof of insurance. He observed that Appellant "appeared to have glassy eyes and [was] moving" in "a sluggish state." N.T., 2/19/2019, at 28. Appellant provided Officer Hayden with his driver's

license, but not his registration or proof of insurance. A "large, bulky plastic bag" was on the passenger seat of the vehicle, and Appellant "seemed very adamant" about reaching into it, despite Officer Hayden's repeated orders to stop reaching into the bag and to place his hands on the steering wheel. Id. at 30.

"[F]or officer safety concerns," after Appellant failed to comply, Officer Hayden attempted physically to stop Appellant. Id. To do so, Officer Hayden reached his right hand into the vehicle through its open window, briefly struggled with Appellant, and then disengaged to set his flashlight and Appellant's driver's license on the top of the vehicle. Officer Hayden then reached in with both of his hands, pulling Appellant towards him, causing the vehicle to rock. Appellant "began to [] fight [Officer Hayden and continued] trying to get into th[e plastic bag] as if there was something very important in that bag." Id. at 31.

At about this time, Officer Vincent Abate, who was dispatched to assist Officer Hayden in his pursuit of Appellant's vehicle, arrived on the scene and observed Officer Hayden struggling with Appellant. He radioed for assistance, and with his Taser drawn, approached the driver's side of the vehicle to the left of Officer Hayden. While Officer Hayden continued to struggle with Appellant, Officer Abate pulled out his handcuffs, and successfully handcuffed Appellant's left hand. Appellant began "flailing" his left hand, at which point Officer Hayden disengaged with Appellant to grab a

- 3 -

Taser attached to his left hip and drive-stun[2] Appellant with it. Id. at 43. Before Officer Hayden was able to employ the drive-stun, Appellant "grabbed the Taser from [Officer Hayden's] hand." Id. at 45.

Officers Abate and Hayden stepped back from the vehicle, and Officer Abate fired[3] his Taser at Appellant, but missed. Next, Officer Abate opened the driver's side door, and for the next 15 seconds, Officer Hayden attempted to extricate Appellant from the vehicle by pulling him, but "[Appellant] was holding on to the steering wheel and part of the center console[,]" causing the vehicle to rock. Id. at 43. Officer Abate joined Officer Hayden, and the officers were able to remove Appellant from the vehicle. Appellant was forced onto his knees, with Officer Hayden leaning on his back and Officer Abate pulling back Appellant's right arm. Officer Jared Krupa then arrived and assisted the officers on the left side of Appellant, grasping Appellant's left arm. With Appellant now in a prone position, Officer Abate pulled back Appellant's right arm and Officer Krupa pulled back Appellant's left arm, exposing Appellant's chest. Meanwhile, Officer Hayden remained on the middle of Appellant's back, striking Appellant with his elbow three times in the back of his head. The instant Officer Hayden moved off of

_____

[2] The Court notes the drive-stun (a pain compliance technique) capability on a Taser requires the administrator to firmly press the Taser against the target to deliver an electro-muscular disruption.

[3] The Court observes a fired Taser shoots out two prongs with barbed darts that are intended to attach to the target.

the center of Appellant's back, Officers Abate and Krupa handcuffed Appellant.

Officer Hayden noticed a laceration on the side of Appellant's face, and accordingly, Officer Krupa summoned emergency medical services (EMS). While waiting for EMS, Officer Abate performed a pain stimulus method on Appellant to evaluate his level of consciousness. Officer Hayden determined Appellant was conscious. After six minutes, Officer Hayden read Appellant the DL-26B form (chemical test warnings). EMS arrived and Appellant was transported to Mercy Hospital.

As a result of this incident, Appellant was charged with driving under the influence of alcohol or controlled substance, fleeing or attempting to elude a police officer, terroristic threats,[4] and resisting arrest, along with various summary traffic violations. A jury trial commenced on February 15, 2019. At trial, onboard dash camera footage was presented as evidence. Officers Hayden and Abate testified about the incident as discussed supra, and Appellant testified to his version of events. Appellant testified that he did not immediately stop when Officer Hayden activated his lights and siren because he was "trying to find a spot that was well-lit, [] a safe environment to me anyway." N.T., 2/19/2019, at 34. Appellant did not testify as to his interactions with the police officers during the stop.

_____

[4] The Commonwealth withdrew this charge at trial.

The jury convicted Appellant of resisting arrest, but acquitted him as to the remaining charges under its purview. The trial court found Appellant guilty of three of the summary traffic violations. On May 6, 2019, the trial court sentenced Appellant to a term of imprisonment of 11½ to 23 months for resisting arrest.

On May 16, 2019, Appellant timely filed a post-sentence motion for reconsideration of sentence, in which he challenged the sufficiency and weight of the evidence to sustain his resisting arrest conviction. That same day, the trial court denied Appellant's post-sentence motion. This timely-filed appeal followed. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

On appeal, Appellant challenges the sufficiency of the evidence to sustain his resisting arrest conviction. See Appellant's Brief at 7.

We review this issue mindful of the following.

> When reviewing a challenge to the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail. This standard applies equally where the Commonwealth's evidence is circumstantial.
>
> In conducting this analysis, we do not weigh the evidence and substitute our judgment for that of the fact-finder. Additionally, the Commonwealth's evidence need not preclude every possibility of innocence in order to prove guilt beyond a

reasonable doubt. The fact-finder is free to believe all, part, or none of the evidence.

Commonwealth v. Knox, 219 A.3d 186, 195 (Pa. Super. 2019) (internal citations and quotation marks omitted).

A person is guilty of resisting arrest when, "with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S. § 5104.

Appellant argues that he was faced with an impossible choice; provide his registration and proof of insurance to Officer Hayden or keep his hands on the steering wheel. See Appellant's Brief at 16. He contends that Officer Hayden "showed extreme agitation over [Appellant's] continued reaching for something – even though it could have been that he was reaching for the exact items requested by this young cop." Id. at 16-17. Appellant states he "did not strike or kick anyone," and concludes therefore, he did not resist arrest, but rather, "[h]e sat in the driver's seat of his car and was assaulted by Officer Hayden." Id. at 24.

Appellant directs our attention to Commonwealth v. Rainey, 426 A.2d 1148 (Pa. Super. 1981) (reversing a resisting arrest conviction when the defendant squirmed, wiggled, and twisted, but did not push or kick, to "shake off" a police officer's grasp), Commonwealth v. Eberhardt, 450 A.2d 651 (Pa. Super. 1982) (holding a defendant's struggle to escape did

not create a substantial risk of bodily injury although an officer sustained a bruise on his arm), and Commonwealth v. Woodford, 616 A.2d 641 (Pa. Super. 1992) (reversing a resisting arrest conviction, finding that an off-duty officer created the substantial risk of injury himself when he attempted to arrest defendant after being alerted defendant was attempting to break into his vehicle), arguing that those cases are factually similar to the instant case and require reversal of his conviction.

Contrary to Appellant's assertion, the crime of resisting arrest "does not require [proof of] the aggressive use of force such as striking or kicking of the officer." Commonwealth v. Miller, 475 A.2d 145, 146 (Pa. Super. 1984).[5] Instead, we find this Court's reasoning in Commonwealth v. Thompson, 922 A.2d 926 (Pa. Super. 2007), instructive here. In Thompson, this Court affirmed a resisting arrest conviction based on the fact that the defendant's conduct – interlocking her limbs with her husband's limbs – required substantial force to overcome the resistance. "Appellant's use of passive resistance requiring substantial force to overcome provided sufficient evidence for upholding the resisting arrest conviction." Id. at 928; see also Commonwealth v. McDonald, 17 A.3d 1282, 1286 (Pa. Super. 2011) (holding evidence that defendant ran from police officers and refused

_____

[5] In Miller, this Court refused to follow dictum in this Court's prior decisions in Eberhardt and Rainey that suggested the Commonwealth must show the defendant kicked or struck an officer to sustain a conviction for resisting arrest. Miller, 475 A.2d at 146 n.4.

- 8 -

to submit to their authority was sufficient to sustain conviction of resisting arrest because officers were required to use substantial force to overcome his resistance).

Likewise, in the case sub judice, there is sufficient evidence to show that police were required to use substantial force to arrest Appellant. Officer Hayden, viewing onboard dash-cam footage, testified that he was concerned for his safety, and had directed Appellant to stop reaching into the plastic bag next to him. N.T., 2/19/2019, at 30. Appellant repeatedly refused to comply with police instructions. Appellant did not simply "wiggle" and "squirm" to escape Officer Hayden, but fought with him when Officer Hayden attempted to stop him from reaching into the bag. Id. at 31. Appellant withstood the officers' attempts at tasering him and grabbed the Taser from Officer Hayden's hand. Id. at 45; see also Commonwealth v. Soto, 202 A.3d 80, 89 (Pa. Super. 2018) (sustaining Soto's conviction for resisting arrest where Soto attempted to take a police officer's Taser and punch him). Multiple officers were required to pull Appellant from his vehicle and place Appellant in handcuffs. Additionally, the jury had the opportunity to view the onboard dash-cam footage, which confirmed the officers' testimony and supported a conclusion that Appellant's conduct required substantial force to overcome. See Thompson, 922 A.2d at 928. Accordingly, viewing the evidence in the light most favorable to the Commonwealth, we conclude the

evidence of Appellant's acts of resistance was sufficient to sustain his conviction of resisting arrest.

Judgment of sentence affirmed.[6]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  7/20/2020

_____

[6] Appellant filed a motion pursuant to Pa.R.A.P. 2501, asking this Court to disseminate the videos in the certified record to the members of this panel. This motion is denied as moot because the videos appear in the certified record.